**VEREX ASSURANCE, INC., Plaintiff,**

v.

**MADUFF MORTGAGE CORPORATION, John Hanson Savings and Loan, Inc., and First City Federal Savings and Loan Association, Defendants.**

**Civ. No. 83–1637–FR.**

United States District Court,
D. Oregon.

Oct. 7, 1985.

**86**

Jack F. Olson, Susan D. Marmaduke, Jack F. Olson & Associates, Portland, Or., for plaintiff.

David B. Markowitz, Markowitz & Herbold, Portland, Or., for defendant Maduff Mortg. Corp.

John Uffelman, Mervin W. Brink, Brink, Moore, Brink & Peterson, Hillsboro, Or., for defendant John Hanson Sav. and Loan, Inc.

Bruce G. Berning, Portland, Or., for defendant First City.

FRYE, Judge:

## OPINION AND ORDER

The matters before the court are:

1. Defendant Maduff Mortgage Corporation's motion in limine;

2. Plaintiff's motion for summary judgment affirming its non-liability under the insurance policies;

3. Plaintiff's motion for summary judgment dismissing defendants' counterclaims against it;

4. Defendant Maduff Mortgage Corporation's motion for partial summary judgment dismissing plaintiff's suit for rescission.

The parties to this action are:

1. Plaintiff Verex Assurance, Inc. (Verex), a private mortgage insurance company engaged in the business of insuring loans secured by interests in real estate.

2. Defendant Maduff Mortgage Corporation (Maduff), a mortgage banker engaged in the business of making construction loans and originating first mortgage home loans for sale in the secondary mortgage market.

3. Defendant John Hanson Savings and Loan Association (John Hanson), a savings and loan institution which, among other things, purchases first mortgage home loans on the secondary loan market.

4. Defendant First City Federal Savings and Loan Association, now known as Crossland Savings FSLA (Crossland), a savings and loan institution which, among other things, purchases first mortgage home loans on the secondary loan market.

## VEREX's MOTION FOR SUMMARY JUDGMENT

On or about October, 1980, Verex issued a standard master policy of insurance to Maduff, thereby establishing a business relationship between Verex and Maduff. Prior to August, 1982, Verex issued a "100% Coverage Master Policy" to Maduff, which enabled Maduff to submit to Verex requests for insurance coverage on loans Maduff might make which were secured by real estate.

During August, 1982, Verex received documentation from a real estate development corporation on sixteen properties in Harney Valley and nine properties in Clymore Court and a request from Maduff for insurance coverage on the loans Maduff contemplated making on the 25 properties. When Verex received the documentation, it evaluated the information therein, assessed the risks involved, and then issued to Maduff "Commitments for Insurance." These Commitments described the loans Verex was willing to insure: the purchase price, the down payment, and the borrower's equity as reflected by the ratios of the loans to the values of the properties securing the loans. Attached to the Commitments for Insurance were Certificates of Insurance for the 25 loans upon the terms and conditions set out in the Commitments for Insurance. The Commitments for Insurance provided that:

> ... any revision of the terms and conditions submitted to you on this commitment, without prior consent of Verex ... *may at Verex ... option* invalidate this commitment and certificate. (Emphasis added.)

After receiving the Commitments for Insurance and the tendering of the Certificates of Insurance, Maduff funded loans on the 25 properties. In September, 1982, Maduff assigned/sold the loans secured by the 16 Harney Valley properties and the Commitments for Insurance issued by Verex to

John Hanson for a total of $1,136,339.64. In December, 1982, Maduff assigned the loans secured by the nine Clymore Court properties and the Commitments for Insurance issued by Verex to Crossland for $80,000 per property.

When the sales closed, Maduff sent the Certificates of Insurance back to Verex, thereby consummating the insurance contracts. Maduff did not tell Verex that, contrary to the terms and conditions of the Commitments for Insurance, the actual sales price of the property was in every case less than the amount of the loan. Maduff did not tell Verex that, contrary to the terms and conditions of the Certificates of Insurance, the loan to value ratio of each of the transactions was not as represented in the terms and conditions of the Commitment for Insurance.

The court finds no evidence of any misrepresentations on the part of any party to this action, but the court concludes that the actual transactions relating to these 25 properties did not comport with the terms of the insurance contracts issued by Verex. The loans for which defendants seek reimbursement vary significantly from the risks which Verex agreed to insure and which were described in the Certificates of Insurance. Therefore, Verex has a contractual right to rescind its contracts. However, Maduff contends that by its negligent or tortious conduct Verex is estopped to do so, or by accepting renewal premiums on the 25 insurance certificates in September and October, 1983, Verex has waived its contractual right to rescind the contract.

In October, 1982, Verex made an appraisal on one of the properties because it had received a report suggesting irregularities surrounding the loan applications. The appraisal revealed/suggested that the properties were probably over-appraised by about ten percent. The Maduff account was then put in an "X" risk status. Also, about this time, Verex had reason to believe that many of the borrowers had inadequate incomes to support the negative cash flows on their properties.

Maduff contends in its counterclaims that Verex failed to inform it of the facts that Verex had discovered in its post-underwriting review; that Verex had a duty to so disclose; that the facts not disclosed were material to Maduff's business transactions; and that if Verex had promptly disclosed such facts, Maduff would have undertaken its own investigation. Maduff contends that in reliance upon Verex's agreements to issue insurance, it approved the insurance contracts and disbursed funds which it would not have disbursed had the problems known to Verex been known to Maduff.

The court finds that there is no evidence of tortious or negligent acts on the part of Verex and that the legal theories of estoppel and waiver cannot apply under the circumstances of this case. The Commitments for Insurance provide in clear language that Verex reserves the right to rescind the contracts *at its option* when any modification of the terms and conditions of the Commitments for Insurance takes place without its consent. No further obligations are imposed on Verex. While equitable principles can act as a bar to rescission, given the undisputed facts of this case and the unambiguous contractual language, the court concludes that Verex is entitled to rescind these contracts.

IT IS HEREBY ORDERED that:

1. Defendant Maduff Mortgage Corporation's motion in limine is MOOT.

2. Plaintiff's motion for summary judgment affirming its non-liability under the insurance policies is GRANTED

3. Plaintiff's motion for summary judgment dismissing defendants' counterclaims against it is GRANTED.

4. Defendant Maduff Mortgage Corporation's motion for partial summary judgment dismissing plaintiff's suit for rescission is DENIED.